## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROYAL TRUCK & TRAILER SALES
AND SERVICE, INC.,
       Plaintiff,

v.

Case No.
Hon.
Mag.

MIKE KRAFT; and KELLY
MATTHEWS A/K/A/ KELLY
SCHLIMMER,
       Defendants.

---

KOTZ SANGSTER WYSOCKI P.C.
By: Anthony M. Sciara (P75778)
    Christopher A. Ferlito (P80574)
Counsel for Royal Truck & Trailer
400 Renaissance Center
Suite 3400
Detroit, Michigan 48243
313-259-8300
asciara@kotzsangster.com
cferlito@kotzsangster.com

---

## **COMPLAINT**

Now comes Plaintiff Royal Truck & Trailer Sales and Service, Inc., by its

counsel, Kotz Sangster Wysocki P.C., in accordance with Federal Rule of Civil

Procedure 8, *et seq*., and for its Complaint against Defendants Mike Kraft and

Kelly Matthews a/k/a Kelly Schlimmer, states:

## PARTIES

1.      Plaintiff Royal Truck & Trailer Sales and Service, Inc. ("Royal") is a Michigan corporation with its corporate headquarters located at 28930 South Wixom Road, Wixom, Michigan, 48393.

2.      Defendant Mike Kraft ("Mike") is an individual residing in Romulus, Michigan.

3.      Defendant Kelly Matthews a/k/a Kelly Schlimmer ("Kelly") is an individual residing in Holly, Michigan.

4.      Mike and Kelly are collectively referred to as "Defendants."

## JURISDICTION AND VENUE

5.      In accordance with 28 USC § 1331, the United States District Court has subject matter jurisdiction over the claim for violation of the Counterfeit Access Device and Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA") because it is a civil action arising under the Constitution, laws, or treaties of the United States.

6.      In accordance with and 28 U.S.C. § 1367, the United States District Court has subject matter jurisdiction over the Michigan statutory and common law claims because they are so related to the claim for violation of the CFAA that they form part of the same case or controversy under Article III of the United States Constitution.

6216.114/doc id# 2169183

7.     In accordance with the United States Constitution, Federal Rule of Civil Procedure 4, and MCL 600.705, this Court has personal jurisdiction over Defendants because, among other things, they have done, caused an act to be done, and/or consequences to occur, in the State of Michigan that have resulted in an action for tort.

8.     In accordance with 28 U.S.C. § 1391, the United States District Court for the Eastern District of Michigan is the proper venue for this action because all Defendants are residents of the State of Michigan and reside in the Eastern District of Michigan; and/or a substantial part of the events or omissions giving rise to the claims in this action occurred in the Eastern District of Michigan.

## BACKGROUND

### ROYAL, MIKE, AND KELLY

9.     Royal is a Midwestern supplier and servicer of new and used semi-trailers, trucks, parts, and accessories.

10.     Defendants were previously employed by Royal.

11.     Mike was employed as a Service Advisor and Salesperson for Royal. As a Service Advisor and Salesperson, Mike was responsible: for (a) quoting pricing for the provision of repair and maintenance services on semi-trailers and trucks for potential, and actual, Royal customers; and (b) managing Shop Technicians to ensure services were properly and timely performed.

12.     Kelly was employed as an Outside Salesperson in the Parts Division for Royal.   As an Outside Salesperson in the Parts Division, Kelly was responsible for maintaining existing business relationships, and developing new business relationships, on behalf of Royal, with potential, and actual, customers interested in purchasing parts from Royal for their semi-trailers, trucks, and related items.

ROYAL'S COMPANY POLICIES

13.     As employees of Royal, Mike and Kelly were aware of, and familiar with, the policies described in the Employee Handbook.

14.     In early 2018, Mike was provided the Employee Handbook and instructed to review it. On February 7, 2018, Mike signed the Employee Handbook Acknowledgement, which is located on the second-to-last page of the Employee Handbook.  The acknowledgement states: "I have read, understand and agree to all of the above."

15.     In early 2018, Kelly was provided the Employee Handbook and instructed to review it.  On February 23, 2018 (and within mere hours before Kelly suddenly resigned from Royal – discussed more below), Kelly surreptitiously sent herself an email from her Royal account to her personal account, which attached an unsigned copy of the Employee Handbook Acknowledgement.

4

16.     Among others, the Employee Handbook contains the following policies:

a. "Examples of prohibited conduct are … [u]nauthorized removal or use of any company property or that of a customer or coemployee…."

b. "Examples of prohibited conduct are … [w]asting, impairing or altering company property...."

c. "All employees are required to return computers, cell phones, tools, manuals, training manuals, customer and pricing lists, files, keys, uniforms, sales office vehicles, supplies, or any other Company property."

d. "The Company provides PTO for employees to take time for rest and recuperation."

e. "Company equipment must be maintained in the best possible manner…. This includes but is not limited to computer equipment and data stored thereon, voice mail, records and employee files…. [T]he use of Company equipment/property for personal activities is strictly prohibited."

f. "Employees are responsible for items issued to them by the Company or in their possession or control, such as but not limited to … [d]atabase information … [c]ustomer lists … [f]iles and documents … [c]omputers, software, manuals, and informational resources … [c]ell phones."

g. "Although the Company strives to ensure that each employee has access to the resources needed to perform his/her job, the Company also expects all employees to understand that use of those resources is limited to the performance of their jobs.  Any unauthorized use, retention or disclosure of any Company resources or property will be regarded as theft warranting disciplinary action up to and including termination and may prompt various civil and/or criminal legal actions."

h. "All content created, saved, and/or shared using the Company's traditional and electronic communication and information systems are a form of corporate correspondence, and are subject to the same internal and external regulation, security and scrutiny as any other corporate correspondence."

6216.114/doc id# 2169183

i.  "Employees shall not attempt to gain access to another employee's personal information systems and messages."

j.  "The Company's electronic information systems are to be used for Company business only."

k.  "Hardware (computers, laptops, tablets, and smart phones) and software (computer files, the e-mail system), furnished to employees are Company property intended for business use."

l.  "The equipment, services, and technology provided to access the Internet remain at all times the property of the Company."

m.  "The following behaviors are examples of previously stated or additional actions and activities that are [considered] prohibited [abuse of the Internet access provided by the Company] and can result in disciplinary action: … [s]ending or posting trade secrets, or proprietary information outside of the organization."

n.  "Company-provided cell phones are intended to be used for business purposes."

o.  "Upon termination of employment, or at any time upon request, employees may be required to return the company-provided cell phone to the supervisor/manager or Human Resources. If company-provided cell phones are lost, damaged due to negligence, or not returned, employees may be responsible for the cost of replacement, unless state or local law require otherwise."

17.   In addition to the above policies, the Employee Handbook also contains the following "Information Security/Confidentiality" policy:

## Information Security/Confidentiality

Employees have been entrusted with one of our most valuable assets -- information -- and they have the responsibility to protect it and to see that it is used only for its intended business purpose. We use information on a daily basis that could be useful to competitors and others who would misuse it.

Confidential information may include, but is not limited to:

- Computer records
- Word processing documents
- Letters and memos
- Paper reports
- Electronic Data Storage
- Conversation
- Passwords and access codes
- Employment records and applications
- Client information (Social Security numbers, phone numbers, account numbers, etc.)

The classified information must be protected from disclosure to competitors and those who would misuse it. Whether employees work with paper records, at a computer terminal, or spend most of their day on the phone, employees are part of the Company's information security systems. This does not include the sharing of information regarding wages, hours, or other terms and conditions of employment.

### Remember these rules when employees handle confidential information:

- Do not disclose to anyone outside the Company any business-related information relating to the Company that has not been disclosed to the public, without appropriate management approval or as required by law, at any time during or **after** their employment. Don't even share this information with other Employees unless they have a business need to know about it. This does not include employee communication of information regarding wages, hours, or other terms and conditions of employment.

- Routinely take precautions to keep confidential information from being disclosed. This includes making sure such information is not displayed on our desks or in their work area where it can be seen by anyone. Employees should also avoid transmitting information via a computer or by fax in ways that might make it available to unauthorized people.

- Require third-party recipients of restricted Company information to keep such information confidential.

- Do not reveal Company trade secrets or the trade secrets of a previous employer or accept improperly obtained proprietary information about another company.
- Maintain the confidentiality of private information and proprietary information from customers, suppliers and other third parties that comes to our attention under an understanding of confidentiality.  We must maintain the proprietary nature of such information and not use or disclose it without proper written authority.
- Logging off from their computer when leaving a work area
- Assuring that hard copies of member, employee or applicant information are kept in a locked area when employees are away from their work area
- Always shred any paperwork that includes any confidential information.  Do not throw this into the regular trash cans or bins.
- Be mindful of clearing items from office equipment (fax/copier) and mail stations.
- Staff should never ask employees for their Windows password and sensitive information, in person, over the phone or via email.  Unusual requests should be verified in dual with the requestor's manager and the employee's manager.

18.     In addition to the policies in the Employee Handbook, Kelly was also aware of, and familiar with, Royal's cellular phone GPS Tracking Policy. Among other things, the policy provides that "[e]mployees may not disable or interfere with the GPS (or any other) functions on a company issued cell phone" and "[e]mployees may not remove any software, functions or apps at any time." On November 11, 2017, Kelly signed an acknowledgement that states: "I have received and am required to read and abide by the [Royal] GPS Tracking Policy set forth above."

THE RESIGNATIONS AND INVESTIGATION

19.     On February 22 and 23, 2018, and without any advance notice, Defendants suddenly resigned their employment with Royal.

20.     Shortly after their resignations, Royal learned Defendants had quickly begun working for a competitor of Royal, T-N-T Trailer Sales L.L.C. ("TNT").

In a similar manner to Royal, TNT describes itself as a "full service semi-trailer dealership … located … in the Detroit Michigan area" that "has a full service and parts department to handle all your transportation needs."

21.   In an effort to ensure valuable, sensitive, confidential, and/or proprietary company property and information had not been compromised by Mike and Kelly, Royal subsequently began investigating Mike's and Kelly's conduct before their resignations.   The investigation unfortunately revealed a substantial amount of nefarious and illegal conduct.   The timing of the events comprising and surrounding this conduct is important.   A table of significant events is provided below:

| Date | Significant Events |
|------|--------------------|
| 2/14/18 (Wednesday) | (1) 4:39 p.m. – Kelly sends Mike an iMessage from her personal cellular phone stating: "Hey call me as soon as you can."<br><br>(2) 4:41 p.m. – Kelly sends Mike another iMessage from her personal cellular phone stating: "Don't forget. Very important." |
| 2/17/18 (Saturday) | (1) **4:08 p.m. – Mike receives an SMS message on his company cellular phone from another Royal employee, "Brian," which asks: "Hey Mike where is TNT located…"**<br><br>(2) **4:09 p.m. – Mike answers Brian by stating: "Please don't text this number bro" and "Call me at 313 770 7053." The number provided by Mike is his personal cellular phone number.**<br><br>(3) **5:25 p.m. – Mike sends a message to "Brian Cell Xtra" stating: "Call me when you have time bro.  I need to talk." Upon information and belief, "Brian Cell Extra" is Brian Bladen, the operations manager for Royal customer, XTRA** |

9

| | |
|---|---|
| | Lease. |
| | (4) **5:29 p.m. – "Brian Cell Xtra" responds by stating: "Ok. I'm in Ann Arbor.  I will call you when I get home."** |
| | (5) **5:54 p.m. – Mike responds with only a "☺."** |
| | (6) **6:34 p.m. – Mike receives a call from "Brian Cell Xtra" and has a conversation for more than fifteen (15) minutes.** |
| 2/18/18 (Sunday) | (1) **7:44 a.m. – Mike forwards a quote for a Royal customer, Ryder Livonia, on a CVS Maxon BMR Liftgate, from his Royal email account to his personal email account.** |
| | (2) 8:32 a.m. – Mike sends an iMessage to his manager, Mike Morrison, which states: "I will be not be coming in Monday or Tuesday due a personal family emergency sir." |
| | (3) **11:01 a.m. – Mike forwards an email from his Royal email account to his personal email account, which attaches the image of a paystub for another Royal employee, Service Technician, Kerry Young.** |
| | (4) **12:01 p.m. – Mike forwards an email from his Royal email account to his personal email account, which attaches the image of a paystub for another Royal employee, Parts Salesperson, Samuel Hernandez.** |
| 2/19/18 (Monday) | (1) **10:41 a.m. – Mike receives an iMessage stating: It's LB!! Congrats on the new job brother !! Dylan was telling me about it."** |
| | (2) 10:58 a.m. – Mike receives an iMessage from another Royal employee, "Nick," asking" "Everything alright?. |
| | (3) 11:35 a.m. – Mike responds to Nick stating: "Yes just had to get some personal stuff handled." |
| 2/20/18 (Tuesday) | (1) **11:44 a.m. – Mike receives an iMessage from someone named "Sherri," which states: "Love you back congratulations on your job rockstar"** |

10

6216.114/doc id# 2169183

| | |
|---|---|
| | (2) **11:45 a.m. – Mike sends an iMessage to "Sherri," which states:** <u>**"Save this other number it's my personal 313 770 7053"**</u><br><br>(3) 4:23 p.m. – Mike receives a <u>"Happy Birthday"</u> iMessage from someone named "Dave Hase."<br><br>(4) **5:33 p.m. – Mike responds to "Dave Hase" by stating:** <u>**"Thanks brother. Save this number it's my personal 313 770 7053 😊"**</u><br><br>(5) 7:03 p.m. – Mike sends an iMessage to his manager, Mike Morrison, stating: <u>"Sorry but I'm going to need the rest of the week off. See you Monday morning."</u><br><br>(6) 7:09 p.m. – Mike Morrison responds by stating: <u>"I hope you're ok. Take care."</u> |
| 2/21/18 (Wednesday) | (1) 6:37 a.m. – Mike sends an iMessage to a Royal employee, "Nick," which states: <u>"Sorry but I'm taking the week off."</u><br><br>(2) 7:40 a.m. – Nick responds stating: <u>"Is everything okay?"</u><br><br>(3) 8:15 a.m. – Mike responds stating: <u>"Not really but Its going to get better I hope."</u><br><br>(4) **11:06 a.m. – Mike sends an email from his Royal email account to a Senior Service Manager at Ryder Truck Rental (a customer of Royal), which states:** <u>**"Can you send me all the new vendor info , so I can get on board with you. Please make sure its all sent to this email mckraft220@gmail.com."**</u><br><br><br>(5) **8:01 p.m. – Mike forwards a quote for a Royal customer, Gemini Transport LLC, on a Hendrickson Subframe Box, from his Royal email account to his personal email account.** |

6216.114/doc id# 2169183

| | |
|---|---|
| | **(6) Mike deletes and reinstalls the entire operating system on his company provided computer (laptop) at some point this day.  The delete and reinstall overwrites everything, which effectively renders all data destroyed and unrecoverable.** |
| 2/22/18 (Thursday) | (1) 4:31 p.m. – Mike receives an iMessage from a Royal employee, "Frank," which states: "<u>Checking on you. Things ok?</u>"<br><br>(2) 4:43 p.m. – Mike responds stating: "<u>As best as the can be buddy.</u>"<br><br>**(3) 7:48 p.m. – Kelly sends an email from her Royal account to Mike's personal email account with the words <u>"Here's some"</u>, which attaches a "Salesperson Summary Report" that contains confidential and proprietary information regarding the month-to-date revenue, profits, and other details relating to eight of the salespeople in Royal's Parts Division.**<br><br>**(4) 8:00 p.m. – Mike attempts to send an email to every employee of Royal, but succeeds only in sending the email to Royal's senior leadership, managers, and some other employees, which attaches a resignation letter.   The resignation letter states: "Please accept this letter as notice of my resignation from my position as senior service advisor effective immediately. I have received a position at another company and after careful consideration; I realize that this opportunity is too exciting for me to decline."** |
| 2/23/18 (Friday) | **(1) 10:55 a.m. – Kelly forwards an email from her Royal account to her personal email account, which contains a sales inquiry (containing customer specific pricing information) from seven days earlier (2/13) allocated to Kelly (by her manager) through Royal's sales analytic software system (sales-i), and with a direction for Kelly to "reach out to your contact and try to get our foot in the door with Kitmasters."** |

6216.114/doc id# 2169183

(2) **10:00 a.m.-12:00 p.m. (approximately) – Royal employees, Mike Morrison and Paul Rodriguez, travel to Mike's home and obtain the return of his company provided computer (laptop) and cellular phone. Thousands of emails, text messages, SMS messages, instant messages, contacts, call logs, and other information from Mike's cellular phone had been deleted before its return.**

(3) **10:28 a.m. – Kelly forwards an email from her Royal account to her personal email account, which attaches an unsigned Employee Handbook Acknowledgment and an unsigned Confidentiality Policy and Pledge.**

(4) **10:29 a.m.-12:08 a.m. – Kelly visits Royal's corporate headquarters, returns her company owned laptop and cellular phone, and immediately resigns. Kelly's cellular phone has been reset to factory settings, which effectively rendered all data on the phone destroyed and unrecoverable.**

(5) **12:09 p.m. – Kelly shares a link on Facebook to the YouTube video for the Johnny Paycheck song, "You can take this job and shove it," with the statement: <u>"And this is how today went."</u>**

## Count I
## Royal v. Mike
## Violation of CFAA – 18 U.S.C. § 1030(2)(c)

22.    Royal incorporates all previous allegations by reference as if fully stated herein.

23.    At all times relevant, Mike's company provided computer (laptop) and cellular phone were protected computers under the CFAA. Among other things, they were connected to the internet, used in interstate commerce, and/or used in interstate communication.

6216.114/doc id# 2169183

24.    Mike's company email account was based/stored within Royal's (Google-based) company server and accessed by Mike through his company provided computer and cellular phone.  Mike exceeded his authorized access to his company provided computer and cellular phone by intentionally accessing them to:

a.  forward a quote for a Royal customer, Ryder Livonia, on a CVS Maxon BMR Liftgate, from his Royal email account to his personal email account;

b.  forward an email from his Royal email account to his personal email account, which attached the image of a paystub for another Royal employee, Service Technician, Kerry Young;

c.  forward an email from his Royal email account to his personal email account, which attached the image of a paystub for another Royal employee, Parts Salesperson, Samuel Hernandez;

d.  forward a quote for a Royal customer, Gemini Transport LLC, on a Hendrickson Subframe Box, from his Royal email account to his personal email account;

e.  destroy all data, programs, systems, and/or information on his company provided computer by removing and reinstalling the entire operating system; and/or

f.  remove a substantial amount of data, programs, systems, and/or information on his company provided cellular phone by deleting thousands of emails, text messages, SMS messages, instant messages, contacts, call logs, and other information.

g.  (Upon information and belief, discovery is likely to reveal additional ways Mike exceeded his authorized access to his company provided computer and/or cellular phone.)

6216.114/doc id# 2169183

25.     As noted above, Mike (and Kelly) destroyed and/or deleted substantial data, programs, systems, and/or information on company provided computers and/or cellular phones.   In order to respond to, determine the extent of this destruction and/or deletion, and attempt to recover information, Royal was forced to retain a digital forensics expert to conduct a comprehensive and costly damage assessment, and attempt to restore the data, programs, systems, and/or information to its prior condition.

26.     The costs associated with the retention of the digital forensics expert to conduct the comprehensive and costly damage assessment, and attempt to restore data, programs, systems, and/or information to its prior condition exceed Five Thousand Dollars ($5,000.00).   The extent of additional losses caused by the destruction and/or deletion of substantial data, programs, systems, and/or information is not yet known.

WHEREFORE, Royal respectfully requests this Court enter a judgment in favor of Royal and against Mike (a) that awards compensatory damages in an amount to be determined at trial (plus interest and costs); and (2) that orders Mike to return all of Royal's property.

6216.114/doc id# 2169183

## COUNT II
## ROYAL V. KELLY
## VIOLATION OF CFAA – 18 U.S.C. § 1030(2)(C)

27.     Royal incorporates all previous allegations by reference as if fully stated herein.

28.     At all times relevant, Kelly's company provided computer (laptop) and cellular phone were protected computers under the CFAA.  Among other things, they were connected to the internet, used in interstate commerce, and/or used in interstate communication.

29.     Kelly's company email account was based/stored within Royal's (Google-based) company server and accessed by Kelly through her company provided computer and cellular phone.  Kelly exceeded her authorized access to her company provided computer and cellular phone by intentionally accessing them to:

a.  send an email from her Royal account to Mike's personal email account with the words "Here's some", which attached a "Salesperson Summary Report" that contained confidential and proprietary information regarding the month-to-date revenue, profits, and other details relating to eight of the salespeople in Royal's Parts Division;

b.  forward an email from her Royal account to her personal email account, which contained a sales inquiry (containing customer specific pricing information) from seven days earlier (2/13) allocated to Kelly (by her manager) through Royal's sales analytic software system (sales-i), and with a direction for Kelly to "reach out to your contact and try to get our foot in the door with Kitmasters"; and/or

16

c. destroy all data, programs, systems, and/or information on her company provided cellular phone by resetting the cellular phone to factory settings.

d. (Upon information and belief, discovery is likely to reveal additional ways Kelly exceeded her authorized access to her company provided cellular phone and/or computer.)

30.    As noted above, Kelly (and Mike) destroyed and/or deleted substantial data, programs, systems, and/or information on company provided computers and/or cellular phones.   In order respond to, determine the extent of this destruction and/or deletion, and attempt to recover information, Royal was forced to retain a digital forensics expert to conduct a comprehensive and costly damage assessment, and attempt to restore the data, programs, systems, and/or information to its prior condition.

31.    The costs associated with the retention of the digital forensics expert to conduct the comprehensive and costly damage assessment, and attempt to restore data, programs, systems, and/or information to its prior condition exceed Five Thousand Dollars ($5,000.00).  The extent of additional losses caused by the destruction and/or deletion of substantial data, programs, systems, and/or information is not yet known.

WHEREFORE, Royal respectfully requests this Court enter a judgment in favor of Royal and against Kelly (a) that awards compensatory damages in an amount to be determined at trial (plus interest and costs); and (2) that directs Kelly to return all of Royal's property.

6216.114/doc id# 2169183

<u>**COUNT III**</u>
<u>**ROYAL V. MIKE**</u>
<u>**CONVERSION (COMMON LAW)**</u>

32.     Royal incorporates all previous allegations by reference as if fully stated herein.

33.     At all times relevant, Royal was the owner of:

a.  the quote for Royal customer, Ryder Livonia, on a CVS Maxon BMR Liftgate;

b.  the paystub for Royal employee, Service Technician, Kerry Young;

c.  the paystub for Royal employee, Salesperson, Samuel Hernandez;

d.  the quote for Royal customer, Gemini Transport LLC, on a Hendrickson Subframe Box;

e.  Mike's company provided computer; and

f.  Mike's company provided cellular phone.

34.     Mike wrongfully exerted dominion and/or control over the above property by: (a) using the property in an unauthorized manner; (b) intentionally destroying and/or altering the property without authorization to do so; and/or (c) receiving stolen property.

35.     As a consequence of Mike's wrongful exertion of dominion and/or control over Royal's property, Royal has suffered damages.

6216.114/doc id# 2169183

WHEREFORE, Royal respectfully requests this Court enter a judgment in favor of Royal and against Mike for compensatory damages, exemplary damages, interest, and costs in an amount to be determined at trial.

**COUNT IV**
**ROYAL V. MIKE**
**CONVERSION – MCL 600-2919A**

36.    Royal incorporates all previous allegations by reference as if fully stated herein.

37.    At all times relevant, Royal was the owner of:

a. the quote for Royal customer, Ryder Livonia, on a CVS Maxon BMR Liftgate;

b. the paystub for Royal employee, Service Technician, Kerry Young;

c. the paystub for Royal employee, Salesperson, Samuel Hernandez;

d. the quote for Royal customer, Gemini Transport LLC, on a Hendrickson Subframe Box;

e. Mike's company provided computer; and

f. Mike's company provided cellular phone.

38.    Mike wrongfully exerted dominion and/or control over the above property for purposes personal to Mike's interests by: (a) using the property in an unauthorized manner; (b) intentionally destroying and/or altering the property without authorization to do so; (c) stealing the property; and/or (d) receiving stolen property.

6216.114/doc id# 2169183

39.     As a consequence of Mike's wrongful exertion of dominion and/or control over Royal's property, Royal has suffered damages.

WHEREFORE, Royal respectfully requests this Court enter a judgment in favor of Royal and against Mike for three (3) times the amount of actual damages sustained, plus costs and reasonable attorney fees.

### COUNT V
### ROYAL V. KELLY
### CONVERSION (COMMON LAW)

40.     Royal incorporates all previous allegations by reference as if fully stated herein.

41.     At all times relevant, Royal was the owner of:

a.  the Salesperson Summary Report;

b.  the sales inquiry (containing customer specific pricing information) from seven days earlier (2/13) allocated to Kelly (by her manager) through Royal's sales analytic software system (sales-i); and

c.  Kelly's company provided cellular phone.

42.     Kelly wrongfully exerted dominion and/or control over the above property by: (a) using the property in an unauthorized manner; (b) intentionally destroying and/or altering the property without authorization to do so; and/or (c) stealing the property.

43.     As a consequence of Kelly's wrongful exertion of dominion and/or control over Royal's property, Royal has suffered damages.

6216.114/doc id# 2169183

WHEREFORE, Royal respectfully requests this Court enter a judgment in favor of Royal and against Kelly for compensatory damages, exemplary damages, interest, and costs in an amount to be determined at trial.

**COUNT VI**
**ROYAL V. KELLY**
**CONVERSION – MCL 600-2919A**

44.     Royal incorporates all previous allegations by reference as if fully stated herein.

45.     At all times relevant, Royal was the owner of:

a.  the Salesperson Summary Report;

b.  the sales inquiry (containing customer specific pricing information) from seven days earlier (2/13) allocated to Kelly (by her manager) through Royal's sales analytic software system (sales-i); and

c.  Kelly's company provided cellular phone.

46.     Kelly wrongfully exerted dominion and/or control over the above property for purposes personal to Kelly's interests by: (a) using the property in an unauthorized manner; (b) intentionally destroying and/or altering the property without authorization to do so; and/or (c) stealing the property.

47.     As a consequence of Kelly's wrongful exertion of dominion and/or control over Royal's property, Royal has suffered damages.

6216.114/doc id# 2169183

WHEREFORE, Royal respectfully requests this Court enter a judgment in favor of Royal and against Kelly for three (3) times the amount of actual damages sustained, plus costs and reasonable attorney fees.

**COUNT VII**
**ROYAL V. MIKE**
**BREACH OF DUTY OF LOYALTY**

48.     Royal incorporates all previous allegations by reference as if fully stated herein.

49.     Mike owed Royal a duty not to compete with Royal while still employed by Royal.

50.     Mike nonetheless commenced with competition against Royal before he resigned from Royal.  Among other things, before Mike resigned from Royal, but after he had secured new employment with Royal's competitor, TNT (unbeknownst to Royal), Mike surreptitiously:

a. forwarded a quote for a Royal customer, Ryder Livonia, on a CVS Maxon BMR Liftgate, from his Royal email account to his personal email account; and

b. subsequently sent an email from his Royal email account to a Senior Service Manager at Ryder Truck Rental, which stated: "Can you send me all the new vendor info , so I can get on board with you. Please make sure its all sent to this email mckraft220@gmail.com."

51.     In his capacity as an employee with Royal, Mike was already "on board" with Royal as a vendor with Ryder.  Consequently, aside from surreptitiously competing with Royal, there was no legitimate reason for Mike to

22

convert the quote, request to "get on board" with Ryder (again) as a vendor, and direct Ryder to send information to Mike's personal email account.   (Upon information and belief, discovery is likely to reveal additional ways Mike began competing with Royal before he resigned.)

52.    As a consequence of his conduct, Mike must forfeit all compensation paid to, or for the benefit of, Mike, from the time he began competing with Royal until he resigned from Royal.

WHEREFORE, Royal respectfully requests this Court enter a judgment in favor of Royal and against Mike for compensatory damages (including, but not limited to all compensation paid to, or for the benefit of, Mike, from the time he began competing with Royal until he resigned from Royal), exemplary damages, interest, and costs in an amount to be determined at trial.

### COUNT VIII
### ROYAL V. MIKE AND KELLY
### CIVIL CONSPIRACY

53.    Royal incorporates all previous allegations by reference as if fully stated herein.

54.    Mike and Kelly engaged in a concerted action to accomplish a criminal and/or unlawful purpose and/or a lawful purpose by criminal and/or unlawful means.

55.    As a consequence of Mike's and Kelly's conduct, Royal has suffered damages.

WHEREFORE, Royal respectfully requests this Court enter a joint and several judgment in favor of Royal and against Mike and Kelly for compensatory damages, exemplary damages, interest, and costs in an amount to be determined at trial.

Respectfully submitted,
KOTZ SANGSTER WYSOCKI P.C.

Dated: March 27, 2018            By:    /s/ Anthony M. Sciara

Anthony M. Sciara (P75778)
Christopher A. Ferlito (P80574)
Counsel for Royal Truck & Trailer
400 Renaissance Center
Suite 3400
Detroit, Michigan 48243
313-259-8300
asciara@kotzsangster.com
cferlito@kotzsangster.com

6216.114/doc id# 2169183